FILED

1 | ANDRÉ BIROTTE JR.
United States Attorney
2 | ROBERT E. DUGDALE
Assistant United States Attorney
3 | Chief, Criminal Division
JAMES A. BOWMAN (Cal. State Bar No.: 220227)
4 | Assistant United States Attorney
Major Frauds Section
5 |     1100 United States Courthouse
      312 North Spring Street
6 |   Los Angeles, California 90012
      Telephone: (213) 894-2213
7 |   Facsimile: (213) 894-6269
      E-mail: james.bowman@usdoj.gov
8 | Attorneys for Plaintiff
UNITED STATES OF AMERICA

2012 MAR -2 PM 3: 53

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

9

10

11 |         UNITED STATES DISTRICT COURT

12 |    FOR THE CENTRAL DISTRICT OF CALIFORNIA

**CR 12 00195**

13 | UNITED STATES OF AMERICA,   )   CR No. _____
                              )
14 |           Plaintiff,        )   PLEA AGREEMENT FOR DEFENDANT
                              )   DAVID KAUP
15 |       v.                   )
                              )
16 | DAVID KAUP,                 )
                              )
17 |           Defendant.        )
                              )
18 |                             )
_____ )

19

20 |     1.  This constitutes the plea agreement between David Kaup

21 | ("defendant") and the United States Attorney's Office for the

22 | Central District of California ("the USAO") in the investigation

23 | of fraud related to American Loans and Funding and First Mortgage

24 | West.  This agreement is limited to the USAO and cannot bind any

25 | other federal, state, local, or foreign prosecuting, enforcement,

26 | administrative, or regulatory authorities.

27

28

<u>DEFENDANT'S OBLIGATIONS</u>

2.  Defendant agrees to:

a) Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit 1 or a substantially similar form, which charges defendant with wire fraud in violation of 18 U.S.C. § 1343.

b) Not contest facts agreed to in this agreement.

c) Abide by all agreements regarding sentencing contained in this agreement.

d) Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e) Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f) Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement to be provided by the USAO.

h) Agree to and not oppose the imposition of the following conditions of probation or supervised release:

1    Without prior written approval from the United States

2  Probation Office ("USPO"), defendant shall not work at, serve as

3  an officer of, become employed by, operate, or actively

4  participate in any business involving loan programs, investment

5  programs, telemarketing activities, trading on the foreign

6  exchange market (also referred to as "Forex"), or any business

7  involving solicitations or cold calls to customers.  Further, at

8  the request of the USPO, defendant shall provide the USPO with

9  access to any and all business records, client lists, bank

10  records, and other records pertaining to the operation of any

11  business operated or owned, in whole or in part, by defendant.

12    3.  Defendant further agrees:

13    a) Truthfully to disclose to law enforcement officials,

14  at a date and time to be set by the USAO, the location of,

15  defendant's ownership interest in, and all other information

16  known to defendant about, all monies, properties, and/or assets

17  of any kind, derived from or acquired as a result of, or used to

18  facilitate the commission of, defendant's illegal activities, and

19  to forfeit all right, title, and interest in and to such items,

20  specifically including all right, title, and interest in and to

21  all United States currency, property and assets seized by law

22  enforcement, including: (1) $398,578.86 in account funds seized

23  from MB Trading account #xxxx2319 held in the name of Timothy

24  Lopez dba Chi Belle Epoche; (2) $52,331.54 in account funds

25  seized from Bank of America account #xxxxx-x5187 held in the name

26  of Chi Belle Epoche; (3) $204,862.70 in account funds seized from

27  MB Trading account #xxxx9338 held in the name of First Mortgage

28  West Lending Corporation; and (4) $45,261.56 in account funds

1  seized from JP Morgan Chase Bank account #xxxxx3735 held in the

2  name of First Mortgage West Lending Corporation.   Defendant

3  admits that the assets listed above constitute either the

4  proceeds of defendant's illegal activity or were used to

5  facilitate defendant's criminal activity in violation of 18

6  U.S.C. § 1343.

7          b) To the Court's entry of an order of forfeiture or

8  personal criminal forfeiture money judgment at or before

9  sentencing with respect to these assets and to the forfeiture of

10 the assets.

11         c) To take whatever steps are necessary to pass to the

12 United States clear title to the assets described above,

13 including, without limitation, the execution of a consent decree

14 of forfeiture and the completing of any other legal documents

15 required for the transfer of title to the United States.

16         d) Not to contest any administrative forfeiture

17 proceedings or civil judicial proceedings commenced against these

18 properties pursuant to 18 U.S.C. § 981(a)(1)(C) or other statute.

19 With respect to any criminal forfeiture ordered as a result of

20 this plea agreement, defendant waives the requirements of Federal

21 Rules of Criminal Procedure 32.2 and 43(a) regarding notice of

22 the forfeiture in the charging instrument, announcements of the

23 forfeiture at sentencing, and incorporation of the forfeiture in

24 the judgment.   Defendant acknowledges that forfeiture of the

25 assets is part of the sentence that may be imposed in this case

26 and waives any failure by the Court to advise defendant of this,

27 pursuant to Federal Rule of Criminal

28 ///

4

Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

e) Not to assist any other individual in any effort falsely to contest the forfeiture of the assets described above.

f) Not to claim that reasonable cause to seize the assets was lacking.

g) To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h) To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i) That forfeiture of assets described above shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

j) To waive all constitutional and statutory challenges to forfeiture of the assets described above on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

## THE USAO'S OBLIGATIONS

4. The USAO agrees to:

a) Not contest facts agreed to in this agreement.

b) Abide by all agreements regarding sentencing contained in this agreement.

c) Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 371, 1341, and 1343 arising out of defendant's

5

1  operation of Lunden Investments, Inc. as described in paragraph 1
2  of the stipulated Factual Statement set forth in Exhibit 2 to
3  this plea agreement.  Defendant understands that the USAO is free
4  to criminally prosecute defendant for any other unlawful past
5  conduct or any unlawful conduct that occurs after the date of
6  this agreement.  Defendant agrees that at the time of sentencing
7  the Court may consider the uncharged conduct in determining the
8  applicable Sentencing Guidelines range, the propriety and extent
9  of any departure from that range, restitution to the victims, and
10 the sentence to be imposed after consideration of the Sentencing
11 Guidelines and all other relevant factors under 18 U.S.C.
12 § 3553(a).

13          d) At the time of sentencing, provided that defendant
14 demonstrates an acceptance of responsibility for the offenses up
15 to and including the time of sentencing, recommend a two-level
16 reduction in the applicable Sentencing Guidelines offense level,
17 pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary,
18 move for an additional one-level reduction if available under
19 that section.

20                        NATURE OF THE OFFENSES
21     5.   Defendant understands that for defendant to be guilty
22 of the crimes charged in counts one and two of the information,
23 that is, wire fraud in violation of Title 18, United States Code,
24 Section 1343, the following must be true:

25          a.   Defendant knowingly participated in and devised a
26 scheme or plan to defraud, or a scheme or plan for obtaining
27 money or property by means of false or fraudulent pretenses,
28 representations, or promises;

        b.   The statements made or facts omitted as part of
the scheme were material; that is, they had a natural tendency to
influence, or were capable of influencing, a person to part with
money or property;

        c.   Defendant acted with intent to defraud; that is,
the intent to deceive or cheat; and

        d.   Defendant used, or caused to be used, an
interstate wire to carry out or attempt to carry out an essential
part of the scheme.

                    PENALTIES AND RESTITUTION

     6.   Defendant understands that the statutory maximum
sentence that the Court can impose for each violation of Title
18, United States Code, Section 1343, is: 20 years imprisonment;
a 3-year period of supervised release; a fine of $250,000 or
twice the gross gain or gross loss resulting from the offense,
whichever is greatest; and a mandatory special assessment of
$100.

     7.   Defendant understands, therefore, that the total
maximum sentence for all offenses to which defendant is pleading
guilty is: 40 years imprisonment; a 3-year period of supervised
release; a fine of $500,000 or twice the gross gain or gross loss
resulting from the offenses, whichever is greatest; and a
mandatory special assessment of $200.

     8.   Defendant understands that defendant will be required
to pay full restitution to the victims of the offenses to which
defendant is pleading guilty.  Defendant agrees that, in return
for the USAO's compliance with its obligations under this
agreement, the Court may order restitution to persons other than

                              7

the victims of the offenses to which defendant is pleading guilty
and in amounts greater than those alleged in the counts to which
defendant is pleading guilty.  In particular, defendant agrees
that the Court may order restitution to any victim for losses
suffered by that victim as a result of any relevant conduct, as
defined in U.S.S.G. § 1B1.3, in connection with the offenses to
which defendant is pleading guilty.  The parties currently
believe that the applicable amount of restitution to victims of
American Loans and Funding and First Mortgage West is
approximately $1,755,971.  The parties also agree that defendant
will pay full restitution to the victims of Lunden Investments,
Inc., and the parties currently believe that the applicable
amount of restitution to the victims of that scheme is
approximately $9,000,000.  Finally, the parties recognize and
agree that these amounts may potentially change based on facts
that come to the attention of the parties prior to sentencing.

9.   The Court will also order forfeiture of the property
listed in the forfeiture allegation of the information pursuant
to 18 U.S.C. § 982, or substitute assets up to the value of that
property.

10.   Defendant understands that supervised release is a
period of time following imprisonment during which defendant will
be subject to various restrictions and requirements.  Defendant
understands that if defendant violates one or more of the
conditions of any supervised release imposed, defendant may be
returned to prison for all or part of the term of supervised
release authorized by statute for the offense that resulted in
the term of supervised release, which could result in defendant

serving a total term of imprisonment greater than the statutory maximum stated above.

11.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.   Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.   Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.   Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

12.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.   The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.   Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

///

///

## FACTUAL BASIS

13.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided in the Factual Statement attached as Exhibit 2 to this plea agreement and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS

14.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

15.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

///

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)] |
| Loss Between $1 million and $2.5 million: | +16 | [U.S.S.G. § 2B1.1(b)(1)(I)] |
| 50 or more victims: | +4 | [U.S.S.G. § 2B1.1(b)(2)] |
| Role in the Offense: | +2 | [U.S.S.G. § 3B1.1(c)] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1] |

Total Offense Level:      26

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraphs 2 and 3) are met.  Subject to paragraph 28 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

16.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.  The parties agree that, taking into account the relevant factors under the Sentencing Guidelines, as well as the

11

1   factors provided in 18 U.S.C. § 3553(a), and the USAO's agreement

2   not to prosecute defendant in connection with his operation of

3   Lunden Investments, Inc. (as described in paragraph 4 above and

4   in paragraph 1 of the attached Factual Statement), a prison

5   sentence of <u>78 months</u> (at the high end of the guideline range

6   resulting from the total offense level calculated above), is a

7   reasonable and appropriate sentence for defendant in this case.

8   Defendant and the USAO therefore agree not to seek, argue, or

9   suggest in any way, either orally or in writing, that the Court

10  impose a term of imprisonment other than 78 months in prison.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

12      18.   Defendant understands that by pleading guilty,

13  defendant gives up the following rights:

14          a)  The right to persist in a plea of not guilty.

15          b)  The right to a speedy and public trial by jury.

16          c)  The right to be represented by counsel - and if

17  necessary have the court appoint counsel - at trial.  Defendant

18  understands, however, that, defendant retains the right to be

19  represented by counsel - and if necessary have the court appoint

20  counsel - at every other stage of the proceeding.

21          d)  The right to be presumed innocent and to have the

22  burden of proof placed on the government to prove defendant

23  guilty beyond a reasonable doubt.

24          e)  The right to confront and cross-examine witnesses

25  against defendant.

26          f)  The right to testify and to present evidence in

27  opposition to the charges, including the right to compel the

28  attendance of witnesses to testify.

1  g) The right not to be compelled to testify, and, if

2  defendant chose not to testify or present evidence, to have that

3  choice not be used against defendant.

4  h) Any and all rights to pursue any affirmative

5  defenses, Fourth Amendment or Fifth Amendment claims, and other

6  pretrial motions that have been filed or could be filed.

7  <u>WAIVER OF APPEAL OF CONVICTION</u>

8  19.  Defendant understands that, with the exception of an

9  appeal based on a claim that defendant's guilty pleas were

10  involuntary, by pleading guilty defendant is waiving and giving

11  up any right to appeal defendant's convictions on the offenses to

12  which defendant is pleading guilty.

13  <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

14  20.  Defendant agrees that, provided the Court imposes a

15  total term of imprisonment on all counts of conviction of no more

16  than 78 months, defendant gives up the right to appeal all of the

17  following: (a) the procedures and calculations used to determine

18  and impose any portion of the sentence; (b) the term of

19  imprisonment imposed by the Court; (c) the fine imposed by the

20  court, provided it is within the statutory maximum; (d) the

21  amount and terms of any restitution order, provided it requires

22  payment of no more than $12,000,000; (e) the term of probation or

23  supervised release imposed by the Court, provided it is within

24  the statutory maximum; and (f) any of the following conditions of

25  probation or supervised release imposed by the Court: the

26  standard conditions set forth in General Orders 318, 01-05,

27  and/or 05-02 of this Court; the drug testing conditions mandated

28  by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the conditions of

13

supervised release agreed to by defendant in paragraphs 2 and 3 above.

21.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 78 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $1,755,971.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

22.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

23.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

24.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this

agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

25.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b) Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the

Federal Rules of Criminal Procedure, or any other federal rule,
that the statements or any evidence derived from the statements
should be suppressed or are inadmissible.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

26.  Defendant agrees that if any count of conviction is
vacated, reversed, or set aside, the USAO may: (a) ask the Court
to resentence defendant on any remaining count of conviction,
with both the USAO and defendant being released from any
stipulations regarding sentencing contained in this agreement,
(b) ask the Court to void the entire plea agreement and vacate
defendant's guilty plea on any remaining count of conviction,
with both the USAO and defendant being released from all their
obligations under this agreement, or (c) leave defendant's
remaining conviction, sentence, and plea agreement intact.
Defendant agrees that the choice among these three options rests
in the exclusive discretion of the USAO.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

27.  Defendant understands that the Court and the United
States Probation Office are not parties to this agreement and
need not accept any of the USAO's sentencing recommendations or
the parties' agreements to facts or sentencing factors.

28.  Defendant understands that both defendant and the USAO
are free to: (a) supplement the facts by supplying relevant
information to the United States Probation Office and the Court,
(b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it

16

1  chooses to impose are not error, although each party agrees to
2  maintain its view that the calculations in paragraph 15 are
3  consistent with the facts of this case.  While this paragraph
4  permits both the USAO and defendant to submit full and complete
5  factual information to the United States Probation Office and the
6  Court, even if that factual information may be viewed as
7  inconsistent with the facts agreed to in this agreement, this
8  paragraph does not affect defendant's and the USAO's obligations
9  not to contest the facts agreed to in this agreement.

10      29.  Defendant understands that even if the Court ignores
11  any sentencing recommendation, finds facts or reaches conclusions
12  different from those agreed to, and/or imposes any sentence up to
13  the maximum established by statute, defendant cannot, for that
14  reason, withdraw defendant's guilty pleas, and defendant will
15  remain bound to fulfill all defendant's obligations under this
16  agreement.  Defendant understands that no one -- not the
17  prosecutor, defendant's attorney, or the Court -- can make a
18  binding prediction or promise regarding the sentence defendant
19  will receive, except that it will be within the statutory
20  maximum.

21                  NO ADDITIONAL AGREEMENTS

22      30.  Defendant understands that, except as set forth herein,
23  there are no promises, understandings, or agreements between the
24  USAO and defendant or defendant's attorney, and that no
25  additional promise, understanding, or agreement may be entered
26  into unless in a writing signed by all parties or on the record
27  in court.

28

1    <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2       31.  The parties agree that this agreement will be

3    considered part of the record of defendant's guilty plea hearing

4    as if the entire agreement had been read into the record of the

5    proceeding.

6    AGREED AND ACCEPTED

7    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF CALIFORNIA

8    ANDRÉ BIROTTE JR.

9    United States Attorney

10

11   _____          2/24/12
                                               _____
12   JAMES A. BOWMAN                           Date
     Assistant United States Attorney

13

14   _____          2/24/2012
                                               _____
15   DAVID KAUP                                Date
     Defendant

16

17   _____          2/24/2012
                                               _____
18   BOB BERNSTEIN                             Date
     Attorney for Defendant
19   David Kaup

20

21

22

23

24

25

26

27

28

                              18

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          2/24/2012
DAVID KAUP                                Date
Defendant

19

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am David Kaup's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          2/24/2012
BOB BERNSTEIN                              Date
Attorney for Defendant
David Kaup

20

**EXHIBIT 2 – FACTUAL STATEMENT OF DEFENDANT DAVID KAUP**

Lunden Investments

1.   In or about 2008, defendant David Kaup owned and operated Lunden Investments, Inc.  Defendant told Lunden Investments' clients that their funds would be used to fund loans by leveraging financial instruments, and that the clients needed to provide initial deposits in order to acquire those loans (clients were typically required to provide a deposit of $500,000 or higher).  Unbeknownst to defendant's clients, defendant used a large portion of the clients' deposits to trade on the foreign exchange market.  As a result of defendant's unsuccessful trades on the foreign exchange market with the investment clients' funds, defendant lost approximately $9 million of the investment clients' funds and was forced to declare bankruptcy.

American Loans and Funding

2.   Defendant owned and operated American Loans and Funding ("ALF"), which purported to offer mortgage loan and refinancing services.  In order to conceal the fact that he owned and operated ALF, defendant KAUP arranged for his friend, S.M., to be listed as the Chief Operating Officer of the company on ALF's corporate records, including ALF's Articles of Incorporation and Statement of Information filed with the California Secretary of State.

3.   From approximately August 2010 through April 2011, defendant carried out a scheme to defraud ALF's clients and induce them into providing defendant with funds that he then used to trade on the foreign exchange market.  This scheme operated, in substance, in the following manner:

1          a.    Defendant contacted homeowners and told them that

2     ALF could offer a 30-year fixed mortgage at a low interest rate

3     to refinance their home loans.

4          b.    Defendant told the homeowners that in order to

5     refinance their homes at the low interest rate, they would have

6     to provide ALF with funds equal to one year of mortgage payments

7     on the new loan, which he referred to as "Verified Asset Funds."

8     Defendant told the homeowners that the Verified Asset Funds were

9     necessary to verify that they had sufficient assets to qualify

10    for the requested loans.   Defendant guaranteed each homeowner

11    that their Verified Asset Funds would be held in ALF's bank

12    account and would be returned after their loan application was

13    either approved or disapproved.

14         c.    In reality, defendant knew (1) that he could not

15    refinance the homeowners' properties at the low interest rates

16    promised to them, and (2) that he was not going to refinance any

17    of the homeowners' properties.   Instead, defendant transferred

18    the Verified Asset Funds that he received from the homeowners to

19    a brokerage account and then used those funds to trade on the

20    foreign exchange market for his own benefit.   Defendant also used

21    some of the Verified Asset Funds from the homeowners to pay his

22    own personal expenses.

23    4.    In furtherance of the scheme to defraud described

24    above, defendant knowingly made the following material false and

25    fraudulent pretenses, representations, and promises:

26         a.    That defendant could refinance the homeowners'

27    properties to a 30-year fixed rate mortgage at an interest rate

28    that was below the then-current market rate.   In truth and in

22

fact, as defendant then well knew, defendant did not intend to refinance the homeowners' properties and could not refinance their properties at the interest rate promised to them.

b.   That the Verified Asset Funds provided by each homeowner were safe because they would remain in an FDIC-insured bank account in the homeowner's name until the loan was either approved or disapproved.   In truth and in fact, as defendant then well knew, the Verified Asset Funds were not kept in an FDIC-insured bank account in the homeowners' names.   Instead, defendant used the Verified Asset Funds to trade on the foreign exchange market and pay his personal expenses.

5.   Also in furtherance of the scheme to defraud above, defendant knowingly concealed the following material facts from homeowners:

a.   That defendant had closed his investment company, Lunden Investments, Inc., in 2008 after losing approximately $9 million of his investment clients' funds trading on the foreign exchange market.

b.   That defendant did not intend to refinance the homeowners' properties, and instead planned to use the Verified Asset Funds to trade on the foreign exchange market.

c.   That the Verified Asset Funds were not kept in an FDIC-insured bank account held by ALF, and that defendant instead used the Verified Asset Funds to (1) trade on the foreign exchange market for his personal benefit, and (2) pay his personal expenses.

///

23

1        d.   That defendant lost hundreds of thousands of

2  dollars from the homeowners' Verified Asset Funds by trading on

3  the foreign exchange market.

4       6.   As a result of the scheme to defraud described above,

5  defendant caused approximately 23 homeowner victims to lose

6  approximately $1,046,983.

7       7.   On or about January 11, 2011, defendant, for the

8  purpose of executing the above-described scheme to defraud,

9  transmitted, caused the transmission, and aided and abetted the

10  transmission of, a wire transfer of $56,689 from homeowner victim

11  K.M.'s account at First Priority Credit Union Bank in Boston,

12  Massachusetts (account number xxxx2300) to ALF's account at Bank

13  of America in Monterey Park, California (account number

14  xxxxxx4691).

15  First Mortgage West

16       8.   Beginning in or about April 2011, and continuing

17  through in or about August 2011, defendant operated First

18  Mortgage West, Inc. ("FMW") along with co-defendants Ron Alex

19  Hernandez and Carlo Montani.  Like ALF, FMW was a company based

20  in Los Angeles, California, that purported to provide mortgage

21  loan and refinancing services.  Through FMW, defendant, along

22  with co-defendants Hernandez and Montani, carried out a scheme to

23  defraud FMW's clients into providing them with funds that they

24  used to trade on the foreign exchange market.  This scheme

25  operated, in substance, in the following manner:

26       a.   Defendant, along with Hernandez and Montani, and

27  others acting at their direction, contacted homeowners and told

28

1  them that FMW could offer a 30-year fixed mortgage at a low

2  interest rate to refinance their home loans.

3  　　　　b.　Defendant, along with Hernandez and Montani, and

4  others acting at their direction, told homeowners that in order

5  to refinance their homes at the low interest rate, they would

6  have to provide FMW with funds equal to one year of mortgage

7  payments on the new loan, which they referred to as "Seasoned

8  Funds." Defendant, along with Hernandez and Montani, and others

9  acting at their direction, told the homeowners that the Seasoned

10 Funds were necessary to verify that they had sufficient assets to

11 qualify for the requested loans. Defendant, along with Hernandez

12 and Montani, and others acting at their direction, guaranteed

13 each homeowner that their Seasoned Funds would be held in FMW's

14 bank account and would be returned after their loan application

15 was either approved or disapproved.

16 　　　　c.　In reality, defendant, along with Hernandez and

17 Montani, knew that (1) they could not refinance their properties

18 at the low interest rates that had been promised to the

19 homeowners, and (2) they were not going to refinance any of the

20 homeowners' properties. Instead, defendant, along with Hernandez

21 and Montani, and others acting at their direction, transferred

22 the Seasoned Funds that they received from the homeowners to a

23 brokerage account and then used those funds to trade on the

24 foreign exchange market for their own benefit. Defendant,

25 Hernandez, and Montani also used some of the Seasoned Funds to

26 pay their own personal expenses.

27

28

9.   In furtherance of the scheme to defraud described above, defendant, along with Hernandez and Montani, and others acting at their direction, knowingly made the following material false and fraudulent pretenses, representations, and promises:

a.   That FMW could refinance the homeowners' properties to a 30-year fixed rate mortgage at an interest rate that was below the then-current market rate.   In truth and in fact, as defendant then well knew, FMW was not going to refinance the homeowners' properties and could not refinance their properties at the interest rate promised to them.

b.   That the Seasoned Funds were safe because they would remain in an FDIC-insured bank account in the homeowners' name until the loan was either approved or disapproved.   In truth and in fact, as defendant then well knew, the Seasoned Funds were not kept in an FDIC-insured bank account in the homeowners' names.   Instead, the vast majority of those funds were transferred to a separate brokerage account, where defendant used the Seasoned Funds to trade on the foreign exchange market.

10.   Also in furtherance of the scheme to defraud above, defendant, Hernandez, and Montani knowingly concealed the following material facts from homeowner victims:

a.   That defendant had closed his investment company, Lunden Investments, Inc., in 2008 after losing more than $9 million of his investment clients' funds trading on the foreign exchange market.

b.   That defendant, Hernandez, and Montani did not intend to refinance the homeowners' properties, and instead

planned to use the Seasoned Funds to trade on the foreign

exchange market.

      c.   That the Seasoned Funds were not kept in an FDIC-

insured bank account held by FMW, and were instead used by

defendant to trade on the foreign exchange market.

11.  Defendant left FMW in August 2011, and defendants

Hernandez and Montani were forced to close FMW in October 2011.

During the time period that defendant operated FMW along with

Hernandez and Montani, the scheme to defraud described above

caused approximately 29 victims to lose a total of approximately

$708,987.

12.  On or about July 15, 2011, within the Central District

of California, defendant, for the purpose of executing the above-

described scheme to defraud, transmitted, caused the

transmission, and aided and abetted the transmission of, a wire

transfer of $21,000 from homeowner H.R.E.'s account at

Traditional Bank in Paris, Kentucky (account number xx3931) to

FMW's account at Bank of America in Long Beach, California

(account number xxxxxx1559).

13.  On or after November 18, 2011, the Federal Bureau of

Investigation seized the following funds: (1) $398,578.86 in

account funds seized from MB Trading account #xxxx2319 held in

the name of Timothy Lopez dba Chi Belle Epoche; (2) $52,331.54 in

account funds seized from Bank of America account #xxxxx-x5187

held in the name of Chi Belle Epoche; (3) $204,862.70 in account

funds seized from MB Trading account #xxxx9338 held in the name

of First Mortgage West Lending Corporation; and (4) $45,261.56 in

account funds seized from JP Morgan Chase Bank account #xxxxx3735

1   held in the name of First Mortgage West Lending Corporation.   The
2   funds described above represented proceeds of the above-described
3   fraud scheme.